UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                      Plaintiff,

v.

MONTE MONTALVO,

                      Defendant.

**AMENDED REPORT, RECOMMENDATION AND ORDER**[1]

Criminal No. 08-CR-004(S)(M)

---

This case was referred to me by Hon. William M. Skretny for supervision of all pretrial matters (Dkt. #11). Before me is defendant's motion to dismiss the indictment, for suppression of physical evidence and statements, for pretrial discovery, and for leave to file additional motions (Dkt. #19). Oral argument was held before me on May 13, 2008 (Dkt. #27). For the following reasons, I recommend that defendant's motion be DENIED to the extent that it seeks to dismiss the indictment and to suppress evidence, and I order that the motion be DENIED to the extent that it seeks pretrial discovery and leave to file additional motions.

---

[1] The sole purpose of this amendment is to correct my erroneous citations to Fed. R. Civ. P. 72 and Local Rule of Civil Procedure 72.3(a)(3) concerning the deadlines for filing objections (Dkt. #37, pp. 15-16). In the event this error resulted in any confusion concerning the deadline for filing objections, I find that the filing of this Amended Report, Recommendation and Order resets the deadline for filing objections.

## BACKGROUND

Defendant, a Buffalo police officer, is charged in an indictment with possession of a firearm (namely a Taurus Model 85 .38 special caliber revolver) on December 20, 2007 while subject to an order of protection, in violation of 18 U.S.C. §§922(g)(8) and 924(a)(2) (Dkt. #1, Count 1).[2] He moves to dismiss the indictment, arguing that the government engaged in evidence tampering by providing the grand jury with a version of the protective order which was different from the version submitted to me in connection with the search warrant application. He also moves to suppress the firearm and ammunition obtained pursuant to a search warrant issued by me on December 19, 2007, arguing that the application for the search warrant failed to establish probable cause for the search of his apartment and automobile. Finally, he moves to compel discovery, and seeks leave to file additional motions.

## DISCUSSION AND ANALYSIS

A.   **Motion to Dismiss the Indictment**

In moving to dismiss the indictment (or in the alternative to conduct a hearing), defendant argues that whereas the copy of the order of protection attached to the search warrant application stated that service of the order was executed on June 4, 2007, the copy of the order which was presented to the grand jury states that service was executed on June 6, 2007 (Dkt. #18, Exs. A and B). Defendant suggests that this is a critical alteration because both versions of the order state that it was granted on June 6, 2007, and therefore would have been invalid if served on June 4, 2007 (Dkt. #18, ¶¶36-43).

---

[2]   Count 2 of the indictment seeks forfeiture of the firearm.

The government responds that the copy presented to the grand jury (Dkt. #30) was a certified copy from the Erie County Clerk's office, obtained via a grand jury subpoena (Dkt. #31). During oral argument, defendant's attorney conceded that the certified copy of the order was a true copy of the original order on file at the Erie County Clerk's office. The government also attaches a copy of the transcript from the June 6, 2007 Family Court proceeding that resulted in the order of protection (Dkt. #22, Ex. C) and argues that it makes clear that defendant was served with a copy of the order of protection at that time (Dkt. #22, pp. 28-30).

Defendant cites no legal authority justifying dismissal of the indictment under these circumstances. The remedy of dismissal "is so drastic that, especially where serious criminal conduct is involved, it must be reserved for the truly extreme cases." United States v. Broward, 594 F. 2d 345, 351 (2d Cir.), cert. denied, 442 U.S. 941 (1979). "It is only in the rare case, where it is impossible to restore a criminal defendant to the position that he would have occupied vis-a-vis the prosecutor, that the indictment may be dismissed." United States v. Fields, 592 F. 2d 638, 648 (2d Cir. 1978), cert. denied, 442 U.S. 917 (1979).

This is not such a case. While the discrepancy between the two versions of the protective order has not been fully explained, nothing in the record suggests that the government deliberately falsified any evidence, and defendant's attorney admits that the version of the order which was presented to the grand jury was accurate. Therefore, I recommend that this portion of defendant's motion be denied.

B.     **Motion to Suppress Physical Evidence**

1.     **Was the search warrant supported by probable cause?**

In moving to suppress the evidence seized pursuant to the search warrant which I issued on December 19, 2007, defendant argues that the search warrant application failed to establish probable cause that he possessed a gun, that the gun would be found in his vehicle or residence, and that he was subject to an order of protection (Dkt. #18, pp. 8-20).

The warrant authorized the search of defendant's residence (577 Richmond Avenue, Apartment 3, Buffalo, New York), as well as his vehicle (a 2004 Mercury Mountaineer, New York license plate #BCE1159), for evidence of a violation of 18 U.S.C. § 922(g)(8), which prohibits the possession of firearms and ammunition, in or affecting commerce, by individuals who are subject to an order of protection. The warrant was supported by the affidavit of FBI Special Agent Frank L. Runles, which included information he learned from his personal participation in the investigation, as well as information for his conversations with other law enforcement officers, including officers of the Buffalo Police Department (Runles Aff., ¶1).

The affidavit attached an order of protection that had been entered against defendant on June 6, 2007 in favor of his spouse (Id., ¶¶2, 5, Ex. A). Agent Runles stated that as a result of the order of protection, defendant was required to turn in his service revolver at the end of every shift and was directed to surrender his personal firearm in September 2006 (Id., ¶5). Runles' affidavit also attached a sworn statement provided to the Buffalo Police Department from an unidentified individual (the "victim"), alleging that following a December 2, 2007 fraternity party, an individual named Monte, who was working security at the party, drove her to his apartment and sexually assaulted her (Id., ¶7, Ex. B). The victim later identified defendant from a

photo spread as the individual that assaulted her (Id., ¶7). When interviewed by the Buffalo Police Department's Professional Standards Division, the victim and another witness to the events preceding the assault stated that defendant was wearing a black holster containing a gun during the frat party (Id., ¶8).

The affidavit also attached a photograph obtained from an unidentified individual depicting defendant at a October 21, 2006 fraternity party wearing what appears to be a black holster containing a hand gun (Id., ¶10, Ex. C). A records check revealed that the vehicle was registered to defendant, and that he received mail at the residence (Id., ¶¶12,14). Defendant also confirmed to detectives that he resided at the residence (Id., ¶9), and surveillance confirmed that the vehicle was parked in the driveway of the residence (Id., ¶¶12, 14). Based upon Agent Runles' training and experience, he opined that "individuals unlawfully possessing firearms would do so in their residence or other locations, such as vehicles" (Id., ¶15).

Defendant's motion to suppress does not require a *de novo* review of the search warrant application which was presented to me on December 19, 2007. "After-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts." Illinois v. Gates, 462 U.S. 213, 236 (1983). "Courts should not invalidate . . . warrants by interpreting affidavits in a hypertechnical, rather than a common sense, manner." Id. "So long as the magistrate had a substantial basis for . . . concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Id.

"A judge's probable-cause determination is not overly strict. Presented with a warrant application, the judge must simply . . . make a *practical, common-sense* decision whether,

given all the circumstances set forth in the affidavit set forth before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place." United States v. Martin, 426 F. 3d 68, 74 (2d Cir. 2005), cert. denied 547 U.S. 1192 (2006) (emphasis in original, citing Illinois v. Gates, supra). "Probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." Id. "The inquiry turns on an assessment of probabilities and inferences, not on proof of specific criminal conduct beyond a reasonable doubt or even by a preponderance of the evidence . . . . Simply put, probable cause is a relaxed standard . . . not a legal determination of legal guilt or liability." Id. at 76. "Minor errors or inconsistencies in supporting affidavits do not undermine the existence of probable cause." United States v. Martin, 157 F. 3d 46, 52 (2d Cir. 1998).

I will analyze defendant's challenges to the search warrant with these principles in mind. Turning first to whether the search warrant application established probable cause that defendant possessed a gun, defendant argues that there was no mention of defendant possessing a gun or ammunition in the victim's December 2, 2007 sworn statement to detectives of the Buffalo Police Department (Dkt. #18, p. 17). However, according to Agent Runles' affidavit, the victim stated to detectives from the Buffalo Police Department's Professional Standards Division that defendant possessed a gun during the incident (Runles Aff., ¶8). Another unidentified witness also interviewed by the Professional Standards Division stated that defendant was wearing a black holster containing a gun during the fraternity party (Id.). Additionally, an unidentified source provided an October 21, 2006 photograph depicting defendant at a fraternity party wearing a

Buffalo Police shirt and black holster containing a gun, after he was directed to surrender all personal weapons (Id., ¶10, Ex. C)

Defendant argues that no information is provided in the search warrant application to establish the veracity or basis of knowledge of the three unidentified individuals who provided the statements and photograph (Dkt. #18, pp. 18-19). However, "an anonymous informant's veracity, reliability, and basis of knowledge are relevant, but not required, components of a probable cause determination." Ortiz v. City of New York, 2006 WL 1643228, *2 (S.D.N.Y. 2006), recon. denied, 2006 WL 1876674 (2006), citing Gates, supra, 462 U.S. at 230.

Although the alleged photograph of defendant was taken over a year earlier, the victim's statement that defendant regularly worked security at fraternity parties and was wearing a Buffalo Police Department jacket on the night of the incident, and the other witness' statement that he wore a black holster containing a gun, are both consistent with the photograph. Moreover, if defendant was required to surrender his service revolver at the end of each shift, it is reasonable to infer that while he was off-duty working at fraternity parties, he possessed a firearm for security purposes.

Although this aspect of defendant's motion may present a close question, the "resolution of . . . marginal cases . . . should be largely determined by the preference to be accorded to warrants." Gates, supra, 462 U.S. at 237 n. 10. Whether each piece of information alone would be sufficient to establish probable cause that defendant possessed an unauthorized gun, when viewed in the context of the totality of the circumstances, I conclude (once again) that the warrant application established probable cause that defendant possessed a gun.

Defendant also argues that the victim never identified defendant's residence or vehicle sufficiently to establish probable cause to search these locations (Dkt. #18, pp. 15, 17). I disagree. Having identified defendant from a photo spread as the individual who assaulted her and possessed a gun, the victim did not have to describe with particularity the residence and vehicle, as this information was confirmed through records checks, surveillance, and defendant's own admissions.

The alleged factual discrepancies contained in the victim's statement do not significantly undermine her identification of defendant, the residence or vehicle. While defendant notes that the victim's statement indicated that defendant drove her in a "black SUV" (Runles Aff., Ex. B) whereas the vehicle is tan in color (Id., ¶12), this discrepancy was also noted in Agent Runles' affidavit and explained by the victim's further statement that she "didn't pay attention to the car" (Id., ¶7). Defendant also notes that the victim's statement indicates that she did not know where he lived (Dkt. #18, p. 14). However, the victim recalled that when she called a cab to pick her up at defendant's apartment, defendant told her that the address was on Richmond (Runles Aff., Ex. B).

The search warrant application need not have conclusively demonstrated that defendant stored a gun or ammunition in the apartment or vehicle, for probable cause "does not demand certainty but only a *fair probability* that contraband or evidence of a crime will be found." United States. v. Gaskin, 364 F.3d 438, 457 (2d Cir. 2004), cert. denied, 544 U.S. 990 (2005) (emphasis added). "Courts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." Id. Based upon his experience and knowledge of the investigation, Agent Runles opined that

"individuals unlawfully possessing firearms would do so in their residence or other locations, such as vehicles, which were considered secure and in which they would have ready access to such firearms" (Runles Aff., ¶15). This opinion was sufficient to establish probable cause that the firearms or ammunition would be found in the apartment or vehicle. "The absence of any specific information more conclusively suggesting that contraband or evidence of Mullen's narcotics trafficking was located at Mullen's . . . place of business or his vehicle . . . does not require suppression . . . . [The] Fourth Amendment's requirement of a fair probability that evidence of a crime exists . . . may be established based on experience and evaluation of facts by [a] trained police officer." United States v. Funderburk, 492 F. Supp. 2d 223, 253 (W.D.N.Y. 2007) (Arcara, J.).

Defendant further argues that, unlike the copy of the order of protection which was given to the grand jury (stating that it was both issued and served on June 6, 2007), the copy included with the search warrant application stated that it was served on June 4, 2007, two days before it was issued (Dkt. #18, ¶35). This discrepancy - of which I admittedly was not aware at the time I signed the search warrant - does not change my probable cause determination. The order of protection presented in support of the search warrant indicates that defendant was present in court at the time of its issuance (Dkt. #18, Ex. A). The order also contains defendant's signature acknowledging that he was advised in court of its issuance and received a copy of it, which belies defendant's claim that he was never given notice of the order (Id.). It is also signed by a judicial officer, and states that it will remain effective until June 6, 2008 (Id.). Corroborating this fact, Agent Runles' affidavit states that because of this order of protection, the Professional Standards

-9-

Division ordered defendant in September 2007 to surrender his service revolver at the end of each shift (Runles Aff., ¶5).

Even assuming *arguendo* that the search warrant was not supported by probable cause, the evidence seized is nevertheless admissible under the good faith exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897, 923 (1984). Where the "outcome of the probable cause challenge is so close, whether or not probable cause is found . . . agents [are] entitled to rely reasonably upon the issuing judge's determination of that very question". United States v. Sykes, 424 F.Supp.2d 590, 602 (W.D.N.Y. 2006) (Telesca, J.) (citing cases).

For these reasons, I recommend that defendant's motion to suppress be denied.

**2.     Seizure of Evidence Outside the Scope of the Warrant**

Defendant argues for the first time in his reply that the "government seized papers of the defendant which were outside of the scope of the search warrant . . . . In addition to all of the other evidence, these should also be suppressed" (Dkt. #24, pp. 7-8). "However, when items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items, not invalidation of the entire search. . . . [T]he drastic remedy of the suppression of *all* evidence seized is not justified unless those executing the warrant acted in flagrant disregard of the warrant's terms." United States v. Matias, 836 F.2d 744, 747 (2d Cir. 1988) (emphasis in original).

Not only was this issue not properly raised in defendant's initial motion papers, but he has also failed to specifically identify the evidence which he claims to be outside the scope of

the warrant. Absent this information, I am unable to determine whether or not the evidence was properly seized. Accordingly, I recommend that this aspect of defendant's motion be denied, without prejudice to renewal upon a proper showing.

### C.  Motion for Pretrial Discovery

In his initial motion, defendant sought a variety of discovery (see Dkt. #18). Because aspects of such motions are typically rendered moot by the government's response, my Scheduling Order (Dkt. #3) required defendant to file a reply following his receipt of the government's response, identifying the remaining areas of dispute From defendant's reply (Dkt. #24), it appears that only the following areas of discovery remain in dispute:

#### 1.  Unredacted Search Warrant Application

The parties entered into a protective order concerning the warrant application and related voluntary discovery (Dkt. #6). Paragraph 4 of Agent Runles' affidavit is the only paragraph that remains redacted. Defendant argues that he is entitled to full disclosure of the search warrant application so that he can properly challenge the warrant (Dkt. #18, ¶33). Defendant's counsel argues that "I am sure that it will contain a good deal of misrepresentations and inaccuracies." (Dkt. #24, p. 9). In response, the government contends that disclosure of paragraph 4 "would possibly frustrate [an] ongoing investigation" (Dkt. #22, p. 26).

Based upon my *in camera* review of the redacted paragraph of Agent Runles' affidavit, I agree with the Government's assertion that because the redacted portion would disclose facts concerning an ongoing investigation, it may not be disclosed to defendant. See

United States v. Saltares, 301 F. Supp. 2d 305, 307 (S.D.N.Y. 2004) (denying the defendant access to an unredacted search warrant application, where "the Court [was] unable to disagree with the Government's assertions that the redacted portions of the Affidavits would provide sufficient information to [the defendant] to enable him to identify the informant").[3] Therefore, I deny this aspect of defendant's motion.

### 2. Law Enforcement Documents

Defendant argues that it is critical that he "be provided with all law enforcement reports in possession of the government and any other reports that were authorized in regards to this investigation" (Dkt. #24, p. 5). The government contends that it has provided various law enforcement reports to defendant pursuant to Rule 16 and voluntarily, and that it will provide additional reports as appropriate at trial pursuant to Jencks (Dkt. #22, p. 3).

Based upon the government's representations, I deny this aspect of defendant's motion. See Fed. R. Crim. P. ("Rule") 16(a)(2).

### 3. Third Party Documents

Defendant seeks "a complete copy, front and back, of any documents that the government has received from any source" (Dkt. #24, p. 6). At oral argument, defendant's attorney clarified that he was seeking to ascertain whether there was a reverse side to the order of protection. Since the government has produced a two-sided copy of the order of protection

---

[3] In any event, the redacted paragraph neither supports nor undercuts my probable cause determination.

submitted to the grand jury (Dkt. #31), and has confirmed at oral argument that there was no reverse side to the copy which accompanied Agent Runles' affidavit, this aspect of defendant's motion is denied as moot.

### 4.  Photographs

Defendant argues that "the government is intent on using photographs and/or images that are completely unrelated to this case. It is their claim that they relate back to an event that happened [*sic*] October 21, 2006 well over a year before the events surrounding this case. . . . These images should be suppressed because they do not [constitute a fair and accurate representation] and the fact that they are irrelevant" (Dkt. #24, p. 7). This aspect of defendant's motion presents an evidentiary question that is best reserved for the District Judge at trial.

Defendant also argues that he "should be given the who, what, where, when and how of the images in order to prepare for trial" (Id.). Because the government is not required to produce this information pursuant to Rule 16, I deny this portion of defendant's motion.

### 5.  Witness List

Defendant seeks a list of government witnesses "so that [he] is not prejudiced in his trial preparation" (Dkt. #24, p. 8). However, "in the absence of a *specific* showing that disclosure [of a witness list] was both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case", the request for a witness list should be denied. United States v. Bejasa, 904 F. 2d 137, 139-40 (2d Cir. 1990), cert. denied, 498 U.S. 92 (1990) (emphasis in original); see United States v. Caldwell, 2008 WL 434595, *7 (W.D.N.Y. 2008) (Schroeder,

MJ) ("[Rule]16 does not require such disclosure, and . . . there has been no showing of need"). Therefore, this request is denied.

### 6. Bill of Particulars

Defendant seeks a variety of information, including the place and time where the actual possession of the firearm occurred, the substance of the conduct encompassed by the indictment which the government intends to prove at trial, whether any ammunition was recovered, and the registered owner of the firearm (Dkt. #24, p. 8; Dkt. #18, Schedule 2 (##4, 5 and 8-11)).

A defendant may obtain a bill of particulars only if the requested information is necessary "(i) to enable him to prepare his defense; (ii) to avoid unfair surprise at trial; and (iii) to preclude a second prosecution for the same offense." United States. v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985). However, a bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense". United States v. Henry, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994). "Whether to grant a bill of particulars rests within the sound discretion of the district court." United States v. Panza, 750 F. 2d 1141, 1148 (2d Cir. 1984).

I find that the indictment, particularly when coupled with the discovery exchanged, provides defendant with sufficient detail to prepare his defense and to avoid prejudicial surprise at trial. Moreover, although several of the particulars requested by defendant focus on his actual possession of the gun (Dkt. #18, Schedule 2 (##4, 11)), actual possession is not required to establish a violation of 18 U.S.C. § 922(g)(8) . See United States v. Johnson, 2008 WL 449794, *2 (2d Cir.

2008) (Summary Order) (" 'Possession' within the meaning of § 922(g)(1) may be actual or constructive"). Therefore, defendant's request for a bill of particulars is denied.

### D.     Motion for Leave to File Additional Motions

Finally, defendant moves "for leave to file any additional motions which may become necessary as a result of disclosures made in connection with this motion" (Dkt. #18, Schedule 6). Because no specific motions have been identified at this time, that aspect of defendant's motion is denied, without prejudice to the possibility of additional motions in the future, upon a showing of good cause.

## CONCLUSION

For these reasons, I recommend that defendant's motion (Dkt. #18) be DENIED to the extent that it seeks to dismiss the indictment and to suppress evidence; I order that his motion be DENIED to the extent that it seeks pretrial discovery; and I order that his motion be DENIED to the extent that it seeks leave to file additional motions, without prejudice to the possibility of future motions upon a showing of good cause. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Crim. P. ("Rule") 58(g)(2) and Local Rule of Criminal Procedure 58.2.

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Local Rule 58.2, or with the similar provisions of Local Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:      June 18, 2008

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge